Our fourth case for argument this morning is United States v. Ron L. Mr. Hillis. May it please the Court. Counsel. My name is Daniel Hillis. I'm with the Federal Public Defender's Office and I represent Mr. Ranjel. He raises four issues on appeal. First, the district court miscalculated the guideline range by incorrectly finding Mr. Ranjel distributed two or more kilograms of cocaine. You've now pronounced his name in two different ways. How does he pronounce it? And I pronounced it differently in calling the case. He calls himself Robert when I speak to him, so I'm uncertain. Pardon? He refers to himself by his first name when I speak to him, so I'm uncertain about the pronunciation of his last name. But to the issue, the judge relied on the government's calculations and did none of its own in reaching the determination about the drug quantity. The government added amounts from three periods to get the 2.07 kilograms. It had the spring of 2002 to June 24th, 2002, which was 750 grams, and April 16th to June 11th period, which was another 750, and then there was another third period, February 1st to March 31st, which was 507 grams, and the district court accepted all those quantities. The problem is all three periods have overlap. The April 16th to June 11th period is completely within the spring to June 24th period, and even the March period is part of the spring period. Also, the February 2nd through March 2 period was wrongly said to consist of nine weeks. The nine weeks were used as a multiplier to determine the ounce weekly deliveries to get to the 507-gram total, but that period of time only includes 59 days, and so if you were to multiply 59 days by the ounce quantities, you get 465.7 grams, not 507. For any of these reasons, the district court's calculations are incorrect. You don't get to 2.07 kilograms of cocaine based on what I just laid out. Furthermore, the quantities were based largely on the memory of a supplier, Juan Corral, and he admitted he could not accurately recall how much he sold, so there's a huge reliability problem in addition to the calculation issue. If the court doesn't have questions about that, I'll turn to the second issue, and that is admittedly a harder row for us to hoe on the obstruction and manager enhancements, but with respect to the obstruction, Mr. Rangel feared arrest, panicked, and went to Mexico. He did not have... Look, he didn't simply run away from the police in the street. He made a calculated decision to flee the country and remain in Mexico for almost 10 years, while the government, you know, the government's case weakened. Why wouldn't it be appropriate to understand that as an obstruction of justice? Well, I'm not certain about your Honor's premise. First of all, he left for Mexico, but as far as a calculated evasion, he didn't get false identification, sell assets, live clandestinely, abscond after cooperation, any of the things that was relevant to the application of that enhancement under the cases the government cited, the shoe case, Orseo, Porter, Gonzalez. This is completely distinct from that. He lived openly in Mexico, and I'm not certain that it did impact the government's case since the government's case largely relied on the Title III's, and if it was really important for the government to go forward on the timely prosecution, why didn't it seek to extradite Mr. Rangel? They knew where he was. They made no efforts. I don't think that it impacted the investigation or the prosecution at all, and to the fact that the poor memory is later asserted as a basis. Poor memory relative to what? The untested statements of an individual in front of a grand jury, such as the case with Mr. Rangel, that hardly demonstrates an inability to recall information, and furthermore, I go back to the fact that there are Title III's, Your Honor, so I'm not certain that these facts square with the relevant case law as cited by the government and relied upon by the district court. In any event, I also draw attention to the fact that there is no proof, the expenditure of any resources by the government, that's something the district court relied on, and then the poor memory of the witnesses is something I just touched upon. That was the only other fact, as I remember the district court relying on to impose the enhancement. Surely my client went to Mexico, and he was there for 10 years, but those are not the necessary benchmarks to determine that the enhancement applies. Are you saying it was simply a coincidence that he left the country when he did and stayed away for 10 years? No, not at all. He panicked and he went to Mexico, but I'm saying the other facts are what distinguish this case from those that properly impose the enhancement. Saying that a witness had poor memory and that the government has to expend resources, those are the justifications the district court gave to impose the enhancement, and I'm saying there's no proof of the expenditure of resources, and the poor memory is relative, again, to what? The inability to recall facts as well as one once testified without cross-examination at the grand jury proceedings? I just don't think that cuts it. That overstates the government's burden on the obstruction. It only needs to show that the defendant engaged in the sort of conduct that's likely to burden the prosecution. You're sort of overstating what the government needs to show. The government has a burden, as Your Honor just explained, but the district court's findings I don't think satisfy application of the enhancement in this particular case, given what the district court expressly relied upon. Even without any specific factual findings about an actual burden, that's not the standard. Even in the complete absence of any actual burden, if it's conduct that's likely to burden, they're in, and you lose. So I think you're over-reading what needs to be shown here, even if there was some infirmity in the findings. It doesn't matter. He's a fugitive for many, many years, willfully. He is. So that on its own, even without any actual impact on the prosecution, is good enough. We prefaced our remarks by saying it's a hard no-no. I accept what you said. As far as the manager enhancement, the district court expressly determined, because there were five participants and I understand what the manager enhancement actually requires, but there seems to be some misunderstanding by the district court about the applicability of the enhancement. The district court thought that there were five people and that was necessary. We've shown that there were not five, and maybe the district court would be inclined not to impose the enhancement in the fashion that it did. But nevertheless, I turn to the third argument, if I may, and that is about the unreliable evidence that was used as an aggravating factor to impose sentence. And that violated Mr. Rangel's Fifth Amendment right to due process. It's not relevant conduct under 1B1.3 because it's not part of the same offense. Furthermore, this case is unlike Watts, which the government principally relies upon, because in Watts it was a guideline issue. And in that case, it was a gun that was part of the charges that were tried to the jury, so they're facts that were introduced at trial. By contrast, we have here a 1990 murder that the government devoted the bulk of its time at the sentencing hearing to prove up at a different type of proceeding than there was in Watts. We don't have a circumstance like in Williams, the Supreme Court where the case for the defendant confessed to the burglaries and other witnesses, disinterested witnesses, gave statements about his participation. We have here, again, a 26-year-old murder. The jury acquitted Mr. Rangel. The government often says about its respect for jury verdicts, but this seems to be a different case. There was a prove up at the sentencing, and it relied on statements by admitted perjurers and liars. Well, Judge, again, acknowledged and took into account the fact that these witnesses had given contrary statements and testimony before. Yes. There seems to be a double standard. If we were to bring those witnesses in and present them as defense witnesses, I don't think they would be deemed credible by any court in this country. But there's a different problem as well, Judge, and that is the judge expressly found that the witnesses had no incentive to lie. You have no faith in the courts of this country at all if you can make a statement like that. I find that very troubling, Mr. Hills. Your Honor, I don't mean any disrespect. I'm saying that there is often a bias that works against defense witnesses when they are presented in the same fashion. Their credibility, their prior histories, their cooperation agreements, anything they can use to discredit them is. And if I may, Your Honor, because I think this is an important point, we have the judge in this case say that the witnesses had no incentive to lie, but in fact we had cooperation agreements that required them to give testimony to support the government at the sentencing hearing. So they had, I think as a Fifth Amendment matter, that's problematic because we've got a judge making a statement about people who have no incentive to color their testimony when they have cooperation agreements that expressly require them, I presume, to continue to give statements of this type. And they have lots of incentive because if they're in violation of the cooperation agreement, all the benefits get pulled and they are at risk of much more time in prison. And the district court completely discounted that as if it didn't exist, and yet it's prominent here. And also, the government didn't tender one of its witnesses, Mr. Quimby, in support of this enhancement, or excuse me, of this effort to prove aggravation. It denied him and Mr. Rangel the ability to cross-examine Mr. Quimby, which again I find to be a problem under the Fifth Amendment because that's a due process requirement even at sentencing. Fourth, unless the court has further questions. I'm sorry. Fourth, the judge gave a period of supervised release of five years. The guidelines required a period of three years. So we have an upward variance, and yet we don't have the necessary and attendant explanation for the upward variance as required by Gall or Dean. We don't have a correct statement of what the guideline range is as required by this court's jurisprudence endowments. So for that reason, I think that the fourth issue in the case is fairly tidily shown to be a violation of the procedural due process requirements. Well, it was correctly calculated as a guidelines matter in the pre-sentence, and the five years was part of the pre-sentence recommended sentence, and the judge accepted the pre-sentence after confirming that the only challenges were to the obstruction and the drug calculation, et cetera, the ones that we've already talked about, and confirming over and over that there were no other objections. So why isn't the burden on the defense if there's an objection to the recommended calculation, first of all, in the pre-sentence, which was accurate, and I take it you agree that it was accurately calculated in the pre-sentence, and then tender an objection to the recommendation? The procedural requirements of Gall, I think, would apply here, and the district court is supposed to make findings at the time of the sentence hearing about what the relevant guideline range is, statutory range, and that wasn't done in court. So I think that's a distinction. Well, by asking for objections and then in the absence of any objections accepting what's being given in the pre-sentence, why isn't that enough to satisfy the obligation to actually do the calculation? It would still be an upward variance, Your Honor, even accepting that premise. We have an unexplained two-year additional period that should have been justified in court and supported by reasons, and that didn't happen. So I think that that demonstrates a procedural error. Unless the court has further questions, I reserve the balance of my time. Thank you. Thank you, Mr. Hillis. Ms. Fernandez-Horvath. Thank you, Your Honor. May it please the Court? You can make the podium a little lower if you want. I think I'm okay, Your Honor. Thank you. Okay. Yes, ma'am. Sure. The government is respectfully requesting that this court affirm the defendant's sentence. Beginning with the first point that counsel raised regarding the district court's miscalculation of the drug quantity. Well, Correll said that he provided Mr. Rangel with quarter-kilogram quantities once, maybe three times. So was the district court truly being conservative when it assumed there were three such transactions rather than just one? I think so, Your Honor. I think when you look at the totality of the evidence that was in front of the court, which is not only quarter-kilograms, but it was also one-eighth of kilogram quantities and ounce quantities between February 1st and June 24th, 2002, and the frequency of the calls and the calls that corroborated, I believe few is, in fact, conservative based on the total evidence before the district court. And in terms of the periods of time, Your Honor, the time period that Correll sold to Rangel in its entirety was February 1st to June 24th until the day that he was arrested. The government calculated the drug quantity based on categories of amounts that he sold, ounce quantities, eight-kilogram quantities, and quarter-kilogram quantities, and then the time periods that corresponded to that. So Correll testified that initially he was supplying Rangel smaller ounce quantities, and then in the spring, the amounts increased, and the amounts that he sold to him were one-eighth-kilogram quantities and quarter-kilogram quantities. The drug calculation was based on Correll's testimony, which was corroborated by the wire calls and also a number of other 75, about over 75 calls that were played during the trial that were included in our sentencing memorandum, which showed the frequency of the drug transactions. The district court's calculation was conservative, and it even noted that it was conservative by stating that there was reliable evidence that he also was supplied and sold marijuana. The defendant even admitted that at the sentencing hearing, and then that he had other suppliers. So the district court did what it was supposed to do. It took all the information in, made its drug quantity calculation based on reliable evidence that was corroborated by not only the calls, but by the calls and the defendant, or Correll's testimony, and made a conservative estimate of the drug calculation. Regarding the obstruction enhancement, the court correctly applied the obstruction enhancement in this case. Now, counsel argues that he didn't use false identification and all these other things that are details of particular cases, but that's not required. What's required is that the court make a finding that this wasn't a panicked flight. It was a calculated evasion, and the court did exactly that, and it had well support for that finding. First, the defendant's own father testified that he was fleeing from FBI charges right before the arrest and that he was going to Mexico. He stayed there for 10 years. When he turned himself in, there was testimony at trial that he told the agent at the U.S. Embassy in Mexico, stating that he was on the run from the FBI and had been for 10 years, and that there was a warrant out for his arrest. And more importantly, down below, the defense conceded that he and his cousin Quimby fled when they learned that there was going to be a mass arrest. Now, as to the question about whether or not if this was really important to the government, why didn't they seek to extradite him, and to say that the government knew where he was just because he was in Mexico does not mean that you know the exact location of the person. And including in the trial testimony on page 66 of the trial transcript, the case agent testified that he did make efforts to find him by interviewing family members, using phone records, and he was unable to. That's neither here nor there. That's not a requirement for this court to apply the obstruction. All the district court needs to find is, based on the defendant's conduct, was this a calculated evasion? The evidence supported that, and that's the finding that the court made. Regarding the evidence that was presented at the sentencing regarding the murder, 1990 murder of Alberto Gonzalez, counsel argues that the court relied on unreliable evidence to make that finding. In terms of that argument, Your Honor, the evidence that was presented on his face supported his involvement. All of the baggage of the witnesses, including perjury convictions, criminal history, bias, prior lies, were exposed to the court. They were crossed by the defense. And the court acknowledged when counsel said that he completely discounted this, the court mentioned it twice. The court stated all three witnesses are convicted felons, all told lies at times to the government's officials, police officers, and others, all eventually cooperated with the government and received reduced sentences based on that cooperation and agreed to cooperate in the future relating to certain cases. And then, in making his finding, again, the district court stated, when taking the witnesses' backgrounds and history, their prior lies, their convictions, their activities as gang members into consideration, it was clear to the court that their testimony here today was credible. So it couldn't be more clear that the judge did not discount that, took it into, acknowledged it, and then still found these witnesses credible. And then regarding the supervised release issue, as the court in its questions to counsel noted, the judge did calculate the supervised release range in that it was in the PSR and it was correctly calculated and the court adopted the PSR. This is the PSR and the sentencing recommendation, both which contain the supervised release range as well as the statutory range, were included and provided to the parties four months before the sentencing. So if there was any issue that was raised at sentencing, counsel could have objected to it below. We do have some pretty categorical case law on this subject. Yes. Oh, you mean the Downs case, Your Honor? Yes. Yes. So the way this case is distinguished from Downs, in that case, it was the same exact issue, but the government argued in that case, well, of course the judge would have imposed the same supervised release even had the court known that the supervised release range was three based on the guidelines. What's distinguishable here is we know that the court knew that the supervised release range was three years because it was included in the PSR, it was included in the sentencing recommendation, which was attached to the PSR, and the court adopted the PSR. So that is how we distinguish the Downs case because there is no mystery here. It's not like in Downs where the court said, how do we know what he thought? Here we know because it was in the PSR, it was correctly calculated, and the court adopted it. So that's in the nature of a harmlessness analysis or a no error analysis? We would argue that there was no error, but if the court were to find that it was an error, then we would say that it would be harmless. We believe no error was committed. And with respect to the two years above the supervised release, the judge made extensive findings on the 3553A factors prior to imposing the sentence and then the supervised release. I think under the current case law, the court's two-year upward departure from the three-year guideline range was supported by what the court said and the sentence that it imposed. If there are no further questions, then I will just rest on my briefs. Thank you. Thank you, counsel. Anything further, Mr. Hillis? Judge Rovner, to your question, I think it's absolutely correct about how can you assume somebody is making conservative calculation when they say there could have been as few as one, but as many as three quantities of this type. It's not a conservative estimate when you choose three instead of one. One is the conservative number. There's also a problem. The district court didn't rely on any of the recordings the government just did as corroboration of the sentencing hearing, so if it's there, that's not what the district court relied upon. As far as the marijuana, that wasn't part of the 2.07 kilograms of cocaine that was calculated by the district court. The amount of marijuana was unproven, and that's a problem with, again, figuring out how we got to 2.07 kilograms, irrespective of everything else that I said about overlapping drug quantities for these vaguely defined periods of what is the spring and so forth. And then finally, finding that the witnesses are credible is one thing, but wrongly finding that they had no incentive to lie, despite the apparent importance of these plea agreements, is a Fifth Amendment issue. That is something that would be a problem under Corona Gonzalez or any of the case law that we cite about a judge relying on an incorrect fact. That is an incorrect fact. These people had lots of incentive to give statements that they did, and the district court discounted those and spoke only of credibility. I think that's a problem as well. But he did say, you know, I'm basing this credibility finding based on all the evidence of their backgrounds and involvement in the activities and, you know, basically in a generic way cited all the liabilities of the witnesses. Why isn't that good enough? Because there are two different things. I can't take issue with the credibility determination, and I am not. I am instead taking issue about the accuracy of the information. That is a Fifth Amendment due process issue. And to say that people had no incentive to lie when it's been noted that they all have cooperations and incentive to give particular statements, I think there's a huge disconnect, and you can't put one in the same camp as the other. Unless the court has anything further, I ask that you vacate me, man. Thank you. Thank you very much, counsel. The case is taken under advisement.